UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHEVY ROSENBERGER, individually, and as parent and natural guardian of F.R.,

                Plaintiff,

-against-

DAVID C. BANKS, in his official capacity as the Chancellor of the New York City Department of Education, and THE NEW YORK CITY DEPARTMENT OF EDUCATION,

                Defendants.

24-CV-6334 (JGLC)

**OPINION AND ORDER**

---

JESSICA G. L. CLARKE, United States District Judge:

      This case is brought under the Individuals with Disabilities Education Act ("IDEA"), appealing the administrative decision that the student F.R. had been provided with a free and appropriate public education in the 2022–2023 school year. F.R.'s parent, Plaintiff Shevy Rosenberger, contends that the Department of Education failed to provide her and her daughter with a timely public school placement letter. She also contends that the Individualized Education Plan developed for her daughter was inadequate because it recommended too large of a class size for her particular needs. This Court, in accordance with established case law, plays a circumscribed role in reviewing state educational decisions under the IDEA and must defer to the expertise of administrative officers when appropriate. Accordingly, and for further reasons detailed herein, Plaintiff's motion for summary judgement is DENIED and Defendants' motion for summary judgment is GRANTED.

## BACKGROUND

F.R. is a student who has a condition that "results in mental retardation, seizures and Autism." ECF No. 21-2 ("PSMF" or "Plaintiff's Statement of Material Facts") ¶ 4; ECF No. 23 ("SUMF" or "Defendants' Statement of Undisputed Material Facts") ¶ 1. As a result, F.R. suffered from distractibility, struggled with receptive and expressive skills, lacked understanding of the concept of a classroom or following rules, required constant supervision, had very few life skills including dressing and toilet training, needed sensory input to assist in her self-regulation, and had issues with self-control. PSMF ¶¶ 5–14.

On November 29, 2021, Shevy Rosenberger, F.R.'s parent and guardian ("Parent"), notified the New York City school district that they had not received a public school placement for the 2021–2022 school year. SUMF ¶ 2. Parent unilaterally placed F.R. at a school called Special Torah Education Program ("STEP"), which F.R. began attending on December 13, 2021. *Id.*; PSMF ¶ 21. At STEP, F.R. was in a class with a student to teacher to assistant ratio of 3:1:2, where she received all related services and a paraprofessional. PSMF ¶ 25. Parent represents that F.R. "indeed progressed as a result of her attendance at STEP." *Id.* ¶ 29.

On May 23, 2022, the Committee on Special Education ("CSE") met to prepare and develop an Individualized Education Program ("IEP") for F.R. for the 2022–23 school year. SUMF ¶ 3. The May 2022 CSE recommended, among other things, a 12-month 6:1+1 special class placement in a specialized public school and related services and supports, with instruction delivered in Yiddish, including occupational therapy, physical therapy, speech-language therapy, and vision education. *Id.* ¶ 4. The CSE also recommended a 1:1 paraprofessional for F.R.'s management needs and four sessions per year of group parent counseling and training. *Id.*

2

The Department of Education ("DOE") represents that they sent Parent notice of a public school placement letter, or School Location Letter, dated June 10, 2022, for the 2022–2023 school year. SUMF ¶ 5. Parent disputes whether the School Location Letter was ever sent or received. PSMF ¶¶ 17–18. Parent's due process complaint affirms that Parent did eventually receive a public school placement, but that it was "delayed and parent had no opportunity to visit the placement to determine its appropriateness." ECF No. 19-2 at PE4. On August 22, 2022, Parent notified DOE of their disagreement with the IEP and of their intent to enroll F.R. in STEP again for the 2022–2023 school year. PSMF ¶¶ 20–21. Parent did indeed enroll F.R. in STEP for the 2022–2023 school year. *Id.* ¶¶ 23–24.

On June 26, 2023, Parent filed a due process complaint alleging that DOE had denied F.R. a free and appropriate public education ("FAPE") for the 2021–2022 and 2022–2023 school years. SUMF ¶ 7. The Impartial Hearing Officer ("IHO") conducted hearings, during which the IHO allowed the presentation of the disputed School Location Letter. ECF No. 1-2 at 13–14. The IHO issued a determination on January 8, 2024. ECF No. 1-1. The IHO found that Parent's 2021–2022 claims were time-barred, that DOE had failed to provide a FAPE for the 2022–2023 school year, that STEP was an appropriate placement for the school year, and that equities favored Parent for reimbursement. SUMF ¶ 8; *see also* ECF No. 1-1 at 13. Parent appealed the IHO decision on her claim being time barred for the 2021-2022 year, and DOE cross-appealed on the finding that it had failed to offer a FAPE for the 2022–2023 year. SUMF ¶ 9.

On April 22, 2024, the State Review Officer ("SRO") found that a FAPE was not denied for the 2022–2023 school year. *Id.* ¶ 10; ECF No. 1-2 ("SRO Dec." or "SRO Decision") at 16. Specifically, the SRO pointed out that aside from a one-paragraph conclusion, the "IHO did not . . . indicate what documentary evidence she relied on in making her determination nor did

she ci[t]e to any documentary evidence in the hearing record to support her decision as to FAPE[.]" SRO Dec. at 9. The SRO then analyzed, over the course of six pages, the student's needs, the discrepancy in class size between STEP and the IEP, the DOE assigned placement, and the dispute regarding whether the DOE sent and whether Parent received the 2022–2023 School Location Letter. *Id.* at 10–16. Ultimately, the SRO concluded that the DOE had offered F.R. an adequate FAPE and that any procedural problems regarding the notification letter did not prevent Parent from obtaining timely information about the assigned school. *Id.* at 13, 15–16.

On August 21, 2024, Parent timely appealed the SRO Decision regarding the 2022–2023 school year to this Court. ECF No. 1. Parent briefed the matter on January 3, 2025, moving for summary judgment and a finding that F.R. was denied a FAPE for the 2022–2023 school year. ECF No. 21 ("PMSJ"). The DOE opposes and cross-moves for summary judgment, seeking affirmation of the SRO's Decision that F.R. was not denied a FAPE for the 2022–2023 school year. ECF No. 24 ("DMSJ").

## LEGAL STANDARD

"In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but 'the procedure is in substance an appeal from an administrative determination, not a summary judgment motion.'" *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012)). "The district court therefore 'engages in an independent review of the administrative record and makes a determination based on a preponderance of the evidence.'" *Id*. (quoting *M.H.*, 685 F.3d at 240). In conducting this independent review, the court "must give due weight to the state administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to

resolve persistent and difficult questions of educational policy." *Id*. (quoting *M.H.*, 685 F.3d at 240). "On issues of law, however, such as the proper interpretation of the federal statute and its requirements, courts owe no deference to state hearing officers." *Bd. Of Educ. Of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (internal citation and quotation marks omitted). "When parents seek to overturn a [State Review Officer's ("SRO")] decision, they bear the burden of demonstrating that the decision was insufficiently reasoned or supported." *Phillips v. Banks*, No. 23-362-CV, 2024 WL 1208954, at *2 (2d Cir. Mar. 21, 2024) (internal citation omitted).

## DISCUSSION

In essence, Parent makes two arguments that F.R. was denied a FAPE. The first is that the procedural issues regarding the delivery of the School Location Letter and its improper use as evidence during the IHO hearing render the offered placement inadequate. The second is that the IEP itself is substantively inadequate because the 6:1+1 class size would be too large for F.R. in light of her needs. The Court addresses each in turn.[1]

**I.     Procedural Issues Regarding School Location Letter Do Not Deprive F.R. of FAPE**

For an IEP to satisfy the IDEA and provide a FAPE, it must be both procedurally and substantively adequate. *See Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 381 (2d Cir. 2003) (stating that courts review state administrative decisions under the IDEA for (1) whether "the State complied with the procedures set forth in the Act" and (2) whether the IEP developed by the school district is "reasonably calculated to enable the child to receive educational

---

[1] Parent also argues that equitable considerations warrant reimbursement for tuition. *See* PMSJ at 13–14. Because the Court determines that the DOE did not deny F.R. a FAPE, the Court does not reach the issue of equitable considerations for reimbursement. *See M.C. v. Voluntown Bd. Of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000) (observing that where "the challenged IEP was adequate, the state has satisfied its obligations under the IDEA and the necessary inquiry is at an end").

benefits[.]"). But not every procedural error will render an IEP inadequate. *See id.* at 381; *Ambrister v. Banks*, No. 23-CV-2746 (JGLC) (BCM), 2024 WL 4326933, at *2 (S.D.N.Y. Sept. 27, 2024) (citing *M.H.*, 685 F.3d at 245)). Ultimately, whether procedural errors amount to a denial of FAPE turns on whether these errors (1) "impeded the [student's] right to a [FAPE]," (2) "significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a [FAPE]", or (3) "caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii); *M.H.*, 685 F.3d at 245. Naturally, one of the procedural requirements is that when a disabled student's placement is determined, the student and their guardians must be informed of that school placement by the start of the school year. *T.C. v. New York City Dep't of Educ.*, No. 15-CV-3477 (VEC), 2016 WL 1261137, at *9 (S.D.N.Y. Mar. 30, 2016).

Parent raises two arguments related to the School Location Letter. First, Parent contends that DOE failed to offer a placement at all because, at least according to Parent, the School Location Letter was never sent, and Parent never received it. PMSJ at 11. Second, Parent argues that the IHO and SRO were wrong to consider the School Location Letter offered by the DOE as evidence, because it was not timely disclosed to Parent in advance of the hearing. *Id.*

First, addressing the consideration of the School Location Letter as evidence, the Court does not find that the IHO and SRO were wrong to consider the Letter. The SRO has already provided a reasoned analysis for why the IHO's decision to allow the Letter into evidence should not be disturbed. *See* SRO Dec. at 13–14. The SRO notes that IHOs are afforded "broad discretion . . . with how they conduct an impartial hearing," and that they are only required to exclude evidence that is "irrelevant, immaterial, unreliable, or unduly repetitious." *Id.* at 13 (citing N.Y. COMP. CODES R. & REGS. tit. 8, § 200.5(j)(3)(xii)(c)–(e) (2025)). The SRO observed that it is the IHO's "duty to ensure that there is an adequate and complete hearing record," and

that the IHO was performing this duty when allowing the Letter into the record. *Id.* at 13–14 (citing N.Y. COMP. CODES R. & REGS. tit. 8, § 200.5(j)(3)(vii)). The Court agrees with the SRO and sees no reason to disturb this conclusion.

Regarding whether DOE failed to offer F.R. a placement by allegedly failing to send the placement letter, Parent cites to *H.L. v. New York City Department of Education*. Parent erroneously contends that *H.L.* stands for the proposition that a failure to send a school location letter prior to the school year constitutes a denial of FAPE. ECF No. 25 ("PMSJ Rep.") at 3 (citing *H.L.*, No. 15-CV-2451 (KPF), 2019 WL 181307 (S.D.N.Y. Jan. 11, 2019)). What *H.L.* instead says is that parents "have the right to obtain timely and relevant information regarding school placement, in order to evaluate whether the IEP can be implemented at the proposed location." *Id.* at *9. To protect that right, DOE must inform the student and guardian of a school placement in a timely manner, and failure to do so amounts to a denial of FAPE if it deprives parents of the aforementioned rights. *Id.* The Court in *H.L.* emphasized that without knowledge of the sites at which the student could have been placed, the parents were unable to assess the sites' capacities to implement the IEP. *Id.* at *9. Thus, the delayed placement information "significantly impeded" the parents' ability to participate in the decision-making process for the child's placement—a procedural violation amounting to a denial of FAPE under Section 1415(f)(3)(E)(ii). *See id.*

This is consistent with other case law in the Circuit. *See Bettinger v. New York City Bd. of Educ.*, No. 06-CV-6889 (PAC), 2007 WL 4208560, at *8 n.26 (S.D.N.Y. Nov. 20, 2007); *T.C.*, 2016 WL 1261137, at *9. Courts have held that as long as parents are informed of placement before the start of the school year, the DOE has not made procedural violations. *See Tarlowe v. New York City Bd. of Educ.*, No. 07-CV-7936 (GEL), 2008 WL 2736027, at *6 (S.D.N.Y. July 3,

2008) (noting that "the IDEA requires only that a valid IEP be in effect at the beginning of each school year" and that because plaintiffs were informed of placement before the start of the school year, the DOE "did not run afoul of this requirement") (internal citation and quotation marks omitted). And courts have further indicated that such procedural violations only amount to denials of a FAPE if it impeded the child's ability to receive a FAPE or the parents' right to participate in the decision-making process. *See id.* ("Without any evidence of harm or prejudice resulting from the timing of the notice, plaintiffs have not established that the failure to provide earlier notice of the specific placement denied [the student] a free appropriate public education.").

Based on the case law, two obstacles prevent Parent from prevailing. The first is that it appears the Parent received some notice of the placement before the start of the school year. The second is that even if Parent received no notice of the placement, the lack of notice did not deny Parent the right to "evaluate whether the IEP can be implemented at the proposed location," because it was inconsequential to Parent what the proposed location was. *H.L.,* 2019 WL 181307, at *9.

First, the Court concludes that there was sufficient evidence for the SRO's finding that Parent did receive a timely placement notice. Parent's due process complaint affirms that Parent did eventually receive a public school placement, and states that it was "delayed and parent had no opportunity to visit the placement to determine its appropriateness." ECF No. 19-2 at PE4. But there is no elaboration on how long this delay was for and whether it came after the start of the school year. In advance of the school year, Parent submitted a letter to DOE, through their counsel, stating that the "public-school program recommended is not appropriate." ECF No. 19-2 at PE96. This letter does not mention a placement letter. This letter is ambiguous and can either

mean that Parent is objecting to the public-school program including placement—meaning they had received the placement letter by this point—or that Parent is objecting solely to the general IEP. Parent appears to contend they had not received the placement letter by the date of the letter. *See* ECF No. 25-1 at 2; PMSJ at 11–12.

The record as a whole appears to suggest that Parent did receive a placement letter at some point before the start of the school year. For one, the placement letter exists and is dated June 10, 2022. ECF No. 19-3 at DE83. Although the exhibit indicates the letter was last printed on October 17, 2023, *id.*, that does not mean the letter was not printed and sent before that date, or that Parent did not receive communication of the placement by some other means. Even if this letter were barred from evidence, there are other facts that cut against Parent. Specifically, Parent's August 22, 2022 letter to the DOE fails to mention that they had not yet received a placement letter or placement information. ECF No. 19-2 at PE96. It just states that Parents were not satisfied with the public-school program. *Id.* Additionally, Parent's own admission that she received a delayed placement by the DOE, without specificity about the length of the delay, suggests that Parent was notified of placement. ECF No. 19-2 at PE4. And finally, the hearing record indicates that Parent had contacted the district staff person noted on the placement letter in November 29, 2021, meaning that at minimum, Parent had a way to learn of the placement in a timely manner, if they so wished. ECF Nos. 19-2 at PE63, 19-3 at DE83.

Second, even if Parent did not receive the placement letter, it is unlikely that such a procedural violation amounted to a denial of FAPE. Based on both the due process complaint and Parent's August 22, 2022 letter, Parent's issue with the placement was the IEP's class size place, and not the location of the placement itself. *See* ECF No. 19-2 at PE4, PE96. Parent's August 2022 letter simply states that she is not satisfied with the public-school program. *See id.* at PE96.

9

There is no evidence that Parent had any intent at all to visit or investigate the placement location. It seems inconsequential to Parent what the school placement was, meaning any procedural error had no impact on Parent's decision to enroll F.R. at STEP and therefore, no impact on F.R.'s access to a FAPE. *See Tarlowe*, 2008 WL 2736027, at *6 ("Without any evidence of harm or prejudice resulting from the timing of the notice, plaintiffs have not established that the failure to provide earlier notice of the specific placement denied [the student] a free appropriate public education.").

In any case, the SRO examined the same issue on appeal and examined the hearing record. SRO Dec. at 13–16. The SRO concluded that "the hearing record does not support the parent's contention that the June 2022 school location letter was unreliable or that any delay in providing the letter impeded her ability to obtain information about the assigned public school." *Id.* at 15. These findings are not determinations of law that this Court should review without giving due weight to the conclusions of administrative officers. *See Bd. Of Educ. Of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021). Deference to this factual finding "is particularly appropriate when, as here, the state hearing officers' review has been thorough and careful." *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998). Accordingly, the Court concludes that Parent did receive the letter before the start of the school year, and even if she did not, the delay did not impact her ultimate decision to enroll F.R. at STEP. There was no procedural error arising to the denial of a FAPE.

## II. The IEP Was Substantively Adequate

Parent argues that the DOE failed to offer F.R. a FAPE for the 2022–2023 school year because "there was no evidence that the class size and ratio of 6:1+1 would have enabled Student to receive an appropriate education." PMSJ at 12. This is a matter of substantive adequacy. "A

school district fulfills its substantive obligations under the IDEA if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement." *A.C. ex rel. M.C. v. Bd. of Educ. of The Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 173 (2d Cir. 2009) (cleaned up). The substantive adequacy of an IEP is "precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers." *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 382 (2d Cir. 2003). And that is because the Court must be "mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *C.S.*, 990 F.3d at 165; *see also A.C.*, 553 F.3d at 173 ("Because administrative agencies have special expertise in making judgments concerning student progress, deference is particularly important when assessing an IEP's substantive adequacy.") (internal citation omitted).

      Here, again, the SRO's thorough and careful review means that deference is especially warranted. *Walczak*, 142 F.3d at 129; *see also R.E. v. New York City Dep't of Educ.,* 694 F.3d 167, 189 (2d Cir. 2012) (noting that "the deference owed to an SRO's decision depends on the quality of that opinion"). While the Court understands that F.R. is in need of substantial support, the SRO performed an in-depth review of F.R.'s needs and why the 6:1+1 class size, although it can be improved upon, is adequate. *See* SRO Dec. at 9–13. That review includes an examination of affidavit testimony from a special education teacher, evaluating the CSE's determinations and the documents that CSE used. *Id.* at 11. That review also includes an examination of the IEP itself, compared with the special education teacher's testimony, state regulations, the evaluative information provided to the CSE, and the student's needs. *Id.* at 12–13. As the SRO notes, "[a]lthough the parent may have preferred the delivery of the student's instruction in a special

11

class with a 3:1+2 ratio . . . [the May 2022 IEP] was specifically tailored to meet the student's needs . . . ." *Id.* at 13.

In light of the SRO's careful review, the Court affirms the determination that the 6:1+1 class size and the IEP as a whole was adequate to provide a FAPE. *See A.C.*, 553 F.3d at 173; *see also R.E.*, 694 F.3d at 189 ("[A] court must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned[.]").

## CONCLUSION

For these reasons, Plaintiff's motion for summary judgement is DENIED and Defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to terminate ECF Nos. 20, 21, and 22 and to CLOSE the case.

Dated: September 29, 2025
New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge